27 F.3d 569
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
BYBLOS U.S.A., INCORPORATED, a New York corporation,
Plaintiff-Appellee,
v.
MORRIS & SONS, INCORPORATED, an Illinois corporation,
Defendant-Appellant.
 No. 93-2769.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 22, 1994.
Decided June 15, 1994.
Rehearing and Suggestion for Rehearing En Banc
Denied July 12, 1994.
 
 1
 Before BAUER and MANION, Circuit Judges, and GILBERT, District Judge.*
 
 ORDER
 I. Facts
 
 2
 Byblos, U.S.A., Inc. (Byblos), a clothing manufacturer, sent several shipments of off-price goods to Morris & Sons, Inc. (Morris), a discount clothing retailer. In all, Byblos made twelve shipments to Morris, and sent an invoice with each shipment as recited below.
 
 
 3
 Invoice Date Number of Pieces Invoice Amount
------------ ---------------- --------------
11-6-90 179 $12,656.00
11-6-90 10 2,445.50
11-19-90 82 9,786.00
11-19-90 457 59,717.50
1-31-91 16 4,817.50
2-6-91 36 3,837.20
3-8-91 128 7,660.50
3-20-91 13 1,333.00
5-8-91 29 2,073.20
5-9-91 9 1,101.60
5-10-91 14 1,514.80
6-3-91 68 7,208.50
 
 
 4
 Apparently, for each shipment, Morris was not satisfied with the quality of some goods. But Morris continued to order more goods, and never sent back the goods that it considered unsatisfactory. Although there were some telephone discussions, Morris never lodged an official complaint with Byblos.
 
 
 5
 When Morris did not make timely payments for the goods, Byblos sued, and the district court held a bench trial. Morris claimed that it had no responsibility to pay for some of the items Byblos shipped, because they were of such poor quality. The district court, however, determined that because Morris accepted and never rejected the goods, it was responsible to pay for them. The court awarded Byblos $111,795.15, which represented the unpaid invoice amounts. Morris appeals.
 
 II. Analysis
 
 6
 To overturn the result of the bench trial conducted in the district court, Morris must show that the court made a basic error of law, or that the facts presented at trial cannot support the court's legal conclusions. Oddi v. Ayco Corp., 947 F.2d 257, 261 (7th Cir.1991). We review the district court's legal conclusions de novo and its factual findings for clear error. Id., Fed.R.Civ.P. 52. A finding is clearly erroneous if the reviewing court is left with a "definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 7
 The parties agree that Illinois law governs these transactions. It is fundamental under the Illinois Commercial Code that a buyer who orders and accepts goods has responsibility to pay for them. See 810 I.L.C.S. Sec. 5/1-1-1 et seq. A buyer may escape his responsibility to pay if it rejects the goods within a reasonable time. Sec. 5/2-602. If the buyer takes delivery on the goods and does not reject them, he is deemed to have accepted the goods. Sec. 5/2-606(1)(b). Once the buyer accepts the goods, he must pay. If he does not, the seller is entitled to recover the price of the goods. Sec. 5/2-709.
 
 
 8
 The district court found that Morris took delivery on the discount clothing and never rejected the goods. The court sets forth its finding in this respect as follows:
 
 
 9
 ... I find Morris' actions in this case inconsistent with its theory of rejection. Morris continued to accept new shipments of goods sight unseen from a seller with whom it was allegedly having trouble communicating, and who was not properly responding to Morris' notifications and requests for permission to return previously received defective goods. Such conduct is illogical and inconsistent with the Morris' assertion that it was extremely frustrated by the defective goods and its inability to get Byblos to resolve the problem. Morris has offered no credible explanation for its behavior in this regard. Had Morris been seriously upset, as it claimed to be, by the large number of defective and unsuitable items being received from Byblos, it would not have allowed Byblos to continue to use its own discretion in picking out items to ship to them for purchase. Morris would not have tolerated the continuation of such an arrangement if in fact it knew that plaintiff was making poor choices, and then refusing or making it difficult for them to reject and return the unacceptable items. Whether deliberate or not, this conduct gave defendant the best of all worlds. It could offer for sale the goods purchased from Byblos, pay for those goods it successfully sold, and claim that the remaining goods were damaged and that it had been trying to reject and return them for months. This amounts to nothing more than playing the market at the expense of the seller. The "rejected" goods would, after the selling season and the appearance of new styles, be relatively worthless to Byblos.
 
 
 10
 This finding is supported by the facts adduced at trial; it is not clearly erroneous.[1] The district court then determined that Morris was responsible to pay $111,795.15. This finding, too, is not clearly erroneous. Byblos submitted several invoices and other business documents evidencing Morris' responsibility to pay this amount. Accordingly, we affirm the district court's determination that Morris owes Byblos $111,795.15 under Illinois commercial law.
 
 
 11
 Morris expends much effort in its brief arguing that the district court was wrong to award the delinquent invoice amounts to Byblos on an "account stated" theory. But just because the district court referred to the invoices as evidence of the amounts owed, does not mean it ruled on an "account stated" theory. Our reading of the district court's order convinces us that the court's legal conclusions were based on the Illinois Commercial Code, and not on an "account stated" theory. We have reviewed the district court's application of the Illinois Commercial Code, and have affirmed its judgment. We make no statement whether an "account stated" theory would have been appropriate in these circumstances.[2]
 
 III. Conclusion
 
 12
 Morris bought off-priced clothing and did not make timely payments. Byblos sued, and the district court held a bench trial; the court determined that Morris owed Byblos money. This conclusion is supported both by Illinois law and by the facts of this case. Therefore, we
 
 
 13
 AFFIRM.
 
 
 
 *
 Hon. J. Paul Gilbert, Chief Judge for the Southern District of Illinois, is sitting by designation
 
 
 [1]
 Defendant points to testimony of several witnesses that indicates some of the goods received were not acceptable and that there were discussions about whether and how to return the goods. But there was plenty of evidence showing that Morris received and sold or attempted to sell these same goods. Thed all of the evidence. We need not retrace the conflicting testimony. Suffice it to say that the district court's findings are supported by the evidence. "I find the testimony of the defense witnesses in this respect, when viewed in light of all of the evidence, lacking in credibility. It is inconceivable to me that a man in business for over 42 years would have a $100,000 problem and do nothing more than make telephone calls and rely upon a vague oral promise from a salesperson." D.Ct. opn. at 11 (Magistrate Judge)
 
 
 [2]
 Even if, by some stretch, it could be determined that the district court ruled on an "account stated" theory, this would only be an alternative ruling to its main determination that Morris was required to pay under the Illinois Commercial Code. Because we affirmed the district court in its legal conclusion under the Illinois Commercial Code, there would be no need to reach any such alternative ruling